IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| L.P.R. CONSTRUCTION CO., LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: 6:24-cv-03224-MDH |
| | ) | |
| DOING STEEL FABRICATION, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendant/Counter Claimant Doing Steel Fabrication, LLC ("Doing Steel") and Defendant Nationwide Mutual Insurance Company's ("Nationwide") (collectively "Defendants") Motion for Partial Summary Judgment. (Doc. 89). Defendants filed Suggestions in Support (Doc. 91), Plaintiff/Counter Defendant L.P.R. Construction Company, LLC ("LPR") filed Suggestions in Opposition (Doc. 103) and Defendants have filed a reply. (Doc. 108). Additionally, before the Court is Plaintiff and Counter Defendant Berkshire Hathaway Specialty Insurance Company's ("Berkshire) (collectively "LPR/Berkshire") Joint Motion for Partial Summary Judgment. (Doc. 92). LPR/Berkshire filed Suggestions in Support (Doc. 93), Defendants filed Suggestions in Opposition (Doc. 106) and LPR/Berkshire have filed a reply. (Doc. 109). The motions are now ripe for adjudication on the merits. For the reasons stated herein, Defendants' Motion for Partial Summary Judgment is **GRANTED IN PART AND DENIED IN PART** and LPR/Berkshire's Joint Motion for Partial Summary Judgment is **DENIED**.

## BACKGROUND

This case arises out of a construction litigation dispute stemming from erection of structural steel for a project in Bentonville Arkansas ("the Project"). Plaintiff/Counter Defendant LPR is a foreign limited liability company with its principal place of business in Loveland, Colorado and with each of its members residing in the state of Colorado. Defendant/Counter Claimant Doing Steel is a Missouri limited liability company whose four individual members are all residents of the state of Missouri. Defendant Nationwide is a foreign insurance company with its principal place of business in Columbus, Ohio. Counter Defendant Berkshire is a foreign insurance company whose principal office is located in Boston, Massachusetts.

On or around January 25, 2022, Plaintiff LPR contracted with Defendant Doing Steel to provide structural and miscellaneous steel erection services, joists & deck work, and materials required for erection as required for the construction of improvements to real property owned by Walmart, Inc in Arkansas. Plaintiff alleges that it has substantially performed its obligations under the subcontract and that $3,111,600.82 is now owed by Defendant Doing Steel. Plaintiff filed a lien against the Walmart property to secure its claim for contract damages. On or around December 28, 2023, Defendant Doing Steel obtained a release of the property from LPR's lien by posting the Mechanic's Lien Release Bond ("Bond") in the amount of $4,000,000.00 pursuant to Arkansas statues.

Plaintiff filed suit with four counts: Count I – Breach of Contract; Count II – Quantum Meruit; Count III – Missouri Prompt Pay Act; and Count IV – Claim Against Nationwide Under Lien Release Bond. (Doc. 1). Defendant Doing Steel filed an Answer to Plaintiff's Complaint raising, in relevant part, the affirmative defenses of setoff, prior material breach and material breach of contract by LPR. (Doc. 11, Affirmative Defenses ¶¶ 3-5). Defendant Doing Steel also

2

filed a First Amended Counterclaim raising two counts: Count I – Breach of Contract – LPR and Count II – Action on Bond – Berkshire. (Doc. 30).

Defendants bring their Motion for Partial Summary Judgment arguing that they are entitled to summary judgment on Count II – Quantum Meruit and Count IV – Claim Against Nationwide Under Lien Release Bond. LPR/Berkshire bring their Joint Motion for Partial Summary Judgment arguing that they are entitled to summary judgment on Counterclaim Count I – Breach of Contract – LPR, Counterclaim Count II – Action on Bond – Berkshire and Defendant Doing Steel's affirmative defenses of setoff, prior material breach and material The Court will take these arguments in turn.

## STANDARD

Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359 (8th Cir. 1993). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). To satisfy this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

3

**DISCUSSION**

# I. Defendants' Motion for Partial Summary Judgment

## A. Count II – Quantum Meruit

Defendants argue they are entitled to summary judgment on Count II – Quantum Meruit because the parties had an express contract for the work performed on the Project. LPR/Berkshire argue that LPR's quantum meruit claim is regarding extra work not governed by the Subcontract Agreement. Specifically, LPR/Berkshire state that as requested by Defendant Doing Steel or required by job conditions, LPR would perform extra work, not within the contractually defined original scope of work. LPR/Berkshire argue that Defendant Doing Steel accepted the work and that LPR's pay applications did not include billing for extra work captured in change order requests ("COR") unless the CORs became fully executed Change Orders. LPR/Berkshire state that the extra work performed by LPR, and accepted by Defendant Doing Steel, was work for which no Change Order was issued.

Under Missouri law, an action for quantum meruit is not allowed when an express contract governs the subject matter for which recovery is sought. *32nd St. Surgery Ctr., LLC v. Right Choice Managed Care*, 820 F.3d 950, 956 (8th Cir. 2016) (citing *Lowe v. Hill*, 430 S.W.3d 346, 349 (Mo.Ct.App.2014) (barring recovery under an equitable theory when there is "an express contract for the very subject matter for which [plaintiff] seeks to recover"); *see also Burrus v. HBE Corp.*, 211 S.W.3d 613, 619 (Mo.Ct.App.2006) ("[A] Plaintiff may not maintain an action in quantum meruit where the plaintiff's relationship with the defendant is governed by an existing contract."). In such cases, "the plaintiff's sole theory of recovery must lie on the contract." *Burrus*, 211 S.W.3d at 619.

The Court finds an express agreement exists that covers changes to the work performed by LPR including extra work. The Subcontract Agreement entered into by Defendant Doing Steel and Plaintiff LPR covers the work to be performed on the project in the instant case. It states in relevant part:

> **Changes.** Contract, without nullifying this Agreement, may direct Subcontractor in writing to make changes to Subcontractor's Work. Adjustment, if any, in the contract price or contract time resulting from such changes shall be set forth in a Subcontract Change Order pursuant to the Contract Documents. *If extra work was ordered by the Contractor and the Subcontractor performed same but did not receive a written order therefor, the Subcontractor shall be deemed to have waived any claim for extra compensation, regardless of any written or verbal protests of claims by the Subcontractor.* All extra work must be approved in writing by Contractor prior to performance and costs submitted no later than ten (10 days following the event/date of occurrence. If the extra work is not submitted during the ten (10) day period the Subcontractor shall be deemed to have waived any claim for extra compensation regardless of any written or verbal protests of claims by the Subcontractor. The Subcontract shall be responsible for any costs incurred by the Contractor for changes of any kind made by the Subcontractor that increases the costs of the work for either the Contractor or other subcontractors when the Subcontractor proceeds with such changes without a written order therefore.
>
> ALL EXTRAS WILL GO TRHOUGH DOING STEEL. Subcontractor will deal directly with DS at ALL TIMES.

(Doc. 103-1, page 13) (emphasis added). As there is an express contract signed by both Defendant Doing Steel and Plaintiff LPR that covers the procedures necessary for any extra work, Plaintiff LPR's claim regarding the change orders requests are governed by this provision of the Agreement. The Court finds there is no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. For the reasons stated, Defendants' Motion for Summary Judgment as to Plaintiff's Count II – Quantum Meruit claim is **GRANTED**. Summary judgment as to Plaintiff's Count II – Quantum Meruit is entered in favor of Defendants.

### B.    Count IV – Claim Against Nationwide Under Lien Release Bond

Defendants argue that Count IV – Claim Against Nationwide Under Lien Release Bond fails because LPR's lien does not provide a "just and true" account of the amounts LPR alleges are owned to it. Specifically, Defendants argue that LPR's lien does not reference, incorporate, or attach any change orders, invoices, time sheets, or any other documentation evidencing that LPR performed the work that makes up its claim amount. Further, Defendants argue that LPR failed to strictly comply with the Arkansas lien requirements as LPR has failed to meet the burden of proving its last day of work performed on the project.

LPR/Berkshire argue that the Western District of Arkansas has already ruled that LPR provided a sufficient just and true account supporting its lien and thus issue preclusion should bar Defendants from relitigating this issue. LPR/Berkshire further argue that LPR's lien is properly and timely perfected, regardless of whether it continued to provide labor, materials or services beyond September 1, 2023. The Court will first evaluate whether collateral estoppel bars Defendants from bringing their argument.

### i.    Collateral Estoppel

"Pursuant to federal law, judicial proceedings in one state will have the same full faith and credit in every court within the United States as they have by law in the courts of such state from which they are taken." *Charleston v. McCarthy*, 8 F.4th 772, 777 (8th Cir. 2021) (quoting *Haberer v. Woodbury Cnty.*, 188 F.3d 957, 961 (8th Cir. 1999)). This applies "to issues decided by state courts even where the subsequent federal case is brought pursuant to 42 U.S.C. § 1983." *Id*.

> Under the doctrine of collateral estoppel "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."

*Charleston v. McCarthy*, 8 F.4th 772, 777 (8th Cir. 2021) (quoting *Turner v. U.S. Dep't of Just.*,

815 F.3d 1108, 1111 (8th Cir. 2016)). Courts will look at state law in determining whether to apply

issue preclusion. *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 335 F.3d 752, 758 (8th Cir. 2003).

Under Missouri law collateral estoppel is appropriate when:

> (1) the issue sought to be precluded is identical to the issue previously decided; (2)
> the prior action resulted in a final adjudication on the merits; (3) the party sought
> to be estopped was either a party or in privity with a party to the prior action; and
> (4) the party sought to be estopped was given a full and fair opportunity to be heard
> on the issue in the prior action.

*Irving v. Dormire*, 586 f.3d 645, 648 (8th Cir. 2009) (citing *Ripplin Shoals Land Co. v. U.S. Army

Corps of Eng'rs*, 440 F.3d 1038, 1044 (8th Cir. 2006)). The Court will analyze the current action

based on the factors articulated above.

### a.    Identical Issues

For collateral estoppel to preclude an issue, the issue must be identical to the issue

previously decided. The party seeking collateral estoppel has the burden "to demonstrate that the

issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Irving

v. Dormire*, 586 F.3d 645, 648 (8th Cir. 2009) (quoting *Dowling v. United States*, 493 U.S. 342,

350, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990)). The Court "must examine the record of the prior

proceeding, including the pleadings and evidence, keeping in mind that the party asserting the

preclusion bears the burden of showing 'with clarity and certainty what was determined by the

prior judgment.'" *Wellons, Inc. v. T.E. Ibberson Co.*, 869 F.2d 1166, 1168 (8th Cir. 1989) (quoting

*Jones v. City of Alton, Ill.*, 757 F.2d 878, 885 (7th Cir. 1985)). The doctrine of collateral estoppel

applies to matters necessarily decided in the former judgment even if there is no specific finding

or reference thereto. *Irving v. Dormire*, 586 F.3d 645, 648 (8th Cir. 2009) (citing *Nelson v. Swing-

A-Way Mfg. Co.*, 266 F.2d 184, 187 (8th Cir. 1959)).

7

The Court finds that the United States District Court for the Western District of Arkansas Order denying Defendants Doing Steel and Nationwide Motion to Dismiss LPR's claim for damages based on the materialmen's lien lacking a "just and true account of the demand due or owing" and the current motion are identical issues. (See Doc 103-1, page 89–90). For the purposes of collateral estoppel, the Court finds the first element satisfied.

### b. Final Adjudication on the Merits

A "final judgment on the merits" must have been rendered on the issue sought to be precluded in the cause in question for that issue to be barred under collateral estoppel. *Loveland v. Austin*, 626 S.W.3d 716, 729 (Mo. Ct. App. 2021) (citing *Jeffrey v. Cathers*, 104 S.W.3d 424, 430 (Mo. App. E.D. 2003); *Spath v. Norris*, 281 S.W.3d 346, 351 (Mo. App. W.D. 2009).

The Court finds that the United States District Court for the Western District of Arkansas's ruling denying Defendants Doing Steel and Nationwide's Motion to Dismiss was not a final adjudication on the merits for the purpose of collateral estoppel. The Western District of Arkansas ruled:

> In considering Defendants' Motion, the Court bears in mind that it must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012) (quoting marks omitted). The lien does, in fact, contain documentation to show the amounts invoiced by L.P.R., the money paid by Doing Steel and credited to the account, and the balance due and owing. The Arkansas Supreme Court held nearly 100 years ago "that failure to itemize the account does not defeat the lien," and as far as the Court is aware, that is still the law today. *See Standard Lumber Co. of Pine Bluff v. Wilson*, 173 Ark. 1024, at *29 (1927). Doing Steel is entitled to request itemized invoices and other more specific documentation to substantiate L.P.R.'s claim–but those requests can be made in the course of discovery. *See id.* ("[W]hen it comes to enforcement of the claim by suit," the defendant may, "for the purposes of defense . . . insist upon the presentation of an itemized claim."). Accordingly, Doing Steel and Nationwide's request for dismissal under Rule 12(b)(6) due to the deficiency of the lien is **DENIED**.

(Doc. 103-1, pages 89–90). The United States District Court for the Western District of Arkansas made its ruling at the motion to dismiss stage, which requires the court accept as true all facts pleaded by the non-moving party and grant all reasonable inferences form the pleadings in favor of the non-moving party. *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012) (quoting marks omitted). While the Western District of Arkansas made the determination that LPR's lien was sufficient to survive a motion to dismiss, it is a lower standard than what would be required at the summary judgment stage or even at a trial setting. If the case remained in the Western District of Arkansas, Defendants could have raised their argument again at various stages of the litigation where the success of the argument may have depended on the legal standard at the summary judgment or trial setting and thus this Court cannot conclude that the Western District of Arkansas's ruling was a final adjudication on the merits. For the purposes of collateral estoppel, the Court finds LPR/Berkshire has failed to satisfy the second element. Thus, collateral estoppel does not bar litigation of this issue.

### ii.     The "Just and True" Account Requirement of the Arkansas Lien Statute

Arkansas Code Annotated Title 18, Chapter 44 governs Mechanics' and Materialmen's Liens. It states that:

> Every contractor, subcontractor, or material supplier as defined in § 18-44-107 who supplies labor, services, material, fixtures, engines, boilers, or machinery in the construction or repair of an improvement to real estate . . . by virtue of a contract with the owner, proprietor, contractor, or subcontractor, or agent thereof, upon complying with the provisions of this subchapter, shall have, to secure payment, a lien upon the improvement and on up to one (1) acre of land upon which the improvement is situated or to the extent of any number of acres of land upon which work has been done or improvements erected or repaired.

Ark. Code Ann. § 19-44-101(a). The filing of a lien is governed by Ark. Code Ann. § 18-44-117 and states that:

A person who wishes to avail himself or herself of the provisions of this subchapter has a duty to file with the clerk of the circuit court of the county in which the building, erection, or other improvement to be charged with the lien is situated and within one hundred twenty (120) days after the things specified in this subchapter have been furnished or the work or labor done or performed:

A just and true account of the demand due or owing to him or her after allowing all credits[.]

Ark. Code Ann. § 18-44-177(a)(1)–(a)(1)(A). Finally, Ark. Code Ann. § 18-44-118 governs the filing of bond in contest of lien. Ark. Code Ann. § 18-44-118 allows for a party to contest a lien by posts a bond with surety in the amount of the lien claimed. Ark. Code Ann. § 18-44-118(a)(1).

The bond shall be conditioned for the payment of the amount of the lien, or so much of the lien as may be established by suit, together with interest and the costs of the action, if upon trial it shall be found that the property was subject to the lien.

Ark. Code. Ann. § 18-44-118(a)(2). The Arkansas lien statute is construed strictly because it is an extraordinary remedy not available to every merchant or worker. *Servewell Plumbing, LLC v. Summit Contractors, Inc.*, 362 Ark. 598, 606, 210 S.W.3d 101, 107 (2005) (citing *Christy v. Nabholz Supply Co., Inc.*, 261 Ark. 127, 546 S.W.3d 425 (1977)). Additionally, the Arkansas Supreme Court ruled on the issue on what is required for a "just and true account". In *Terry v. Klein*, 133 Ark. 366, 201 S.W. 801 (1918) the Arkansas Supreme Court held:

Conceding that the words 'just and true account' mean, as ordinarily construed, an itemized account (*Brooks v. International Shoe Co.*, 132 Ark. 386 [200 S. W. 1027]), this court has decided that failure to itemize the account does not defeat the lien. *Wood v. King*, 57 Ark. 284 [21 S. W. 471]. In reaching that conclusion the court followed the rule which had been repeatedly announced here that the lien of a mechanic or material furnisher 'springs out of the appropriation and use by the landowner of the mechanic's labor or the furnisher's materials, and not from the taking of those formal steps which the statute enjoins for the preservation and assertion of the lien and for giving notice to others of its existence and extent'; that the statute is highly remedial in its nature and that when 'the controversy is between the holder of the lien and the proprietor of the land, an exact compliance with the statute at all points is not indispensable.' *Anderson v. Seamans*, 49 Ark. 475 [5 S. W. 799]."

LPR has satisfied the Arkansas Code Annotated § 18-44-117 requirement of a just and true statement of account. Here, LPR/Berkshire has submitted LPR's True and Just Statement of Account as shown below.

**True and Just Statement of Account**

| | | | |
|---|---|---|---|
| Original Contract Sum | | | $2,691,295.00 |
| 2. Net Change by Change Order | | | $1,658,192.36 |
| 3. Contract Sum to Date | | | $4,349,487.36 |
| 4. Total Completed and Stored to Date | | | $4,349,487.36 |
| 5. Doing Steel Fabrication has paid: | | | |
| Check # W-092822 | 9/28/2022 | Trans # 65 | -$522,198.35 |
| Check # W-111022 | 11/10/2022 | Trans # 2 | -$594,579.92 |
| Check # W-013123 | 1/31/2023 | Trans # 35 | -$121,108.27 |
| | | | -$1,237,886.54 |
| Full Amount Due to L.P.R. Construction Co., LLC | | | **$3,111,600.82** |

(Doc. 103-1, page 20). While the lien statute does not define what documentation is minimally necessary for a "just and true account of the demand" the above accounting is enough to comply with the statute. This accounting shows the amounts invoiced by LPR, the money paid by Defendant Doing Steel, and the balance due and owing. While Defendants argue that LPR's lien does not reference, incorporate, or attach any change orders, invoices, time sheets, or any other documentation evidencing that LPR performed the work that makes up its claim amount, that, in itself, is not a requirement as defined in Ark. Code Ann. § 18-44-117. The Court finds that LPR has satisfied the Ark. Code Ann. § 18-44-117 with its true and just statement of account. For the reasons stated, Defendants' Motion for Summary Judgment on Count IV - Claim Against Nationwide Under Lien Release Bond based upon the just and true account requirement in Ark. Code Ann. § 18-44-117 is **DENIED**.

### iii. Last Day of Work Performed

Defendants argue that LPR did not and cannot provide sufficient evidence of the work it performed on its purported last day of work or even what its last day of work was. Defendants further argue that this failure to identify the work performed on its last day of work, and the fact that this last day of work is likely inaccurate, qualifies as a failure to strictly comply with statutory requirements as outlined by Ark. Code Ann. § 18-44-115. Specifically, Defendants contend that Peter Radice, corporate representative for LPR, testified that September 1, 2023, was the "last day that [LPR] furnished work," but he could not state exactly what work was performed on that date, but he thought "it was something with the miscellaneous metals package." Statement of Facts ("SOF") ¶ 8. Defendants argue that both manpower reports and contemporaneous e-mails after September 1, 2023, indicate that LPR was performing work beyond just removing equipment after September 1, 2023, which demonstrates the last day of work was after September 1, 2023. SOF ¶ 11. LPR/Berkshire's argue that LPR has always maintained that it last performed work on September 1, 2023. LPR argues that it provided the 75-day notice on October 23, 2023, less than 75 days after September 1, 2023. LPR/Berkshire further argue that the same pertains to LPR's 10-day notice and that LPR recorded its lien on November 30, 2023, less than 120 days after its last furnishing, all in compliance with Ark. Code Ann. § 18-44-115. Regardless, LPR argues that if its final day of work was September 1, 2023 or beyond, it has satisfied Ark. Code Ann. § 18-44-115.

Ark. Code Ann. § 18-44-115 governs notice to owner by contractor. Specifically, Ark. Code Ann. § 18-44-115(b)(5)(A) states that the "notice shall be sent to the owner, the owner's authorized agent, or the owner's registered agent and to the contractor before seventy-five (75) days have elapsed from the time that the labor was supplied or the materials furnished."

LPR has complied with Ark. Code Ann. § 18-44-115. Here, LPR has provided an affidavit of Junius Bracy (JB) Cross an attorney who has been licensed to practice law in the State of

12

Arkansas since 1978 and who primarily practices in commercial construction law and Arkansas lien law. (Doc. 103-3, ¶¶ 2-4). Mr. Cross assisted in preparing the lien and reviewed the lien filed by LPR with the Benton County Circuit Clerk. *Id* at ¶ 5. Mr. Cross stated that LPR last performed work on September 1, 2023, and was required to give its 75-day Notice by November 15, 2023, pursuant to Ark. Code Ann. § 18-44-115(b). *Id* at ¶¶ 11-12. Mr. Cross stated LPR gave its 75-day Notice on October 23, 2023, within the timeframe required and that the 75-day notice complied with the service and notice requirements of Ark. Code Ann. § 18-44-115(b)(5)(B). *Id* at ¶¶ 13 and 15. LPR also provided its 75 Day Notice to Owner and Contractor which was served on Defendant Doing Steel and other parties on October 23, 2023. (Doc. 103-3, page 17-19). The Court finds that LPR has complied with Ark. Code Ann. § 18-44-115(b)(5)(A). Ark. Code Ann. § 18-44-115(b)(5)(A) requires that the "notice shall be sent to the owner, the owner's authorized agent, or the owner's registered agent and to the contractor before seventy-five (75) days have elapsed from the time that the labor was suppled or the materials furnished. While the parties may disagree about the specific end date, there is no dispute that LPR has filed the notice either on September 1, 2023 or at a later date, and thus complied with the 75-day mandate of Ark. Code Ann. § 18-44-115(b)(5)(A). For the reasons stated, Defendants' Motion for Summary Judgment on Count IV - Claim Against Nationwide Under Lien Release Bond based upon the requirements of Ark. Code Ann. § 18-44-115 is **DENIED**.

## II.   LPR/Berkshire's Joint Motion for Partial Summary Judgment

### A.   Affidavits

Before the Court can evaluate LPR/Berkshire's Joint Motion for Partial Summary Judgment, Defendants first raise that the affidavits of Chris Cozza, LPR's project manager, and

Peter Radice, LPR's Chief Operations Officer, should be given limited weight, and portions of these affidavits should be struck. Specifically, Defendants argue that both the Cozza and Radice affidavits lack foundation. LPR/Berkshire argue that both affiants confirm that their affidavits are based on personal knowledge and there is not a single instance where their affidavits are inconsistent with their earlier deposition testimony.

District courts enjoy considerable discretion when ruling on a motion to strike. *See Jain v. CVS Pharmacy, Inc.*, 779 F.3d 753, 758 (8th Cir. 2015). A court may strike an affidavit or declaration that does not comply with Rule 56(c)(4). *Id.* Federal Rule of Civil Procedure 56(c)(4) governs affidavits or declarations for purposes of summary judgment. It states that:

> An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(4). Lay opinion testimony is admissible if the witness has "personal knowledge" or "perceptions based on industry experience." *Jain v. CVS Pharmacy, Inc.*, 779 F.3d 753, 758 (8th Cir. 2015) (quoting *Allied Sys., Ltd. v. Teamsters Local 604*, 304 F.3d 785, 792 (8th Cir. 2002)).

### i. Chris Cozza Affidavit

Defendants argue that Mr. Cozza in his affidavit represents that he has the knowledge of the facts set forth in his affidavit based on his position as the project manager for LPR. Defendants argue that in Mr. Cozza's deposition he covered his involvement in scheduling, change order, general project oversight, and ordering equipment but nothing regarding contract negotiations or

pay applications.[1] However, Defendants assert that Mr. Cozza opines about the contracts for the project in paragraphs 3-11 and 29, about pay applications for the project in paragraphs 13-17, 23 and 25 and about default letters and information regarding change orders from Doing Steel in paragraphs 29-33 of the affidavit.

The Court finds that Mr. Cozza's affidavit is made from his personal knowledge, sets out facts that would be admissible evidence and shows that he is competent to testify on the matters stated. Here, Mr. Cozza's affidavit states "I served as project manager for [LPR] for the Walmart ACT Center Project in Bentonville, Arkansas ("the Project"). As such, I have personal knowledge of the facts set forth in this affidavit." (Doc. 93-1, page 2, ¶ 1). Defendants are correct that Mr. Cozza opines about the contracts for the project, default letters and information regarding change orders. However, Mr. Cozza expressly confirms his personal knowledge on the subjects in the affidavit and it is reasonable to conclude that the project manager for LPR would have personal information as to the contracts, default letters and information regarding change orders. As such, the Court finds that Mr. Cozza's affidavit complies with Federal Rule of Civil Procedure 56(c)(4). For the reasons stated, Defendants' Motion to Strike or to weigh lightly Mr. Cozza's affidavit is **DENIED**.

### ii.     Peter Radice Affidavit

Defendants argue that Mr. Radice's affidavit similarly lacks foundation by alleging that the basis for his personal knowledge in the affidavit is: (1) his role as Chief Operations Officer for LPR during LPR's involvement in the Project; and (2) that he is currently serving in the role.

---

[1] While Defendants reference Mr. Cozza's deposition in their Suggestions in Opposition (Doc. 106, page 69) they have failed to provide an exhibit or copy of Mr. Cozza's deposition with their Suggestions in Opposition. As such the Court is unable to review Mr. Cozza's deposition.

Defendants argue that his affidavit talks about issues related to alleged defaults by Doing Steel, the Contreras work, letters received from Doing Steel regarding change orders, and generally, the alleged "uncontroverted" nature of Doing Steel's defaults which he has no foundation.

The Court finds that Mr. Radice's affidavit is made from his personal knowledge, sets out facts that would be admissible evidence and shows that he is competent to testify on the matters stated. Here, Mr. Radice's affidavit states:

> I served as chief operations officer for [LPR] during the time LPR was involved in the Walmart ACT Center Project in Bentonville, Arkansas ("the Project"), and currently serve in that same role. As such, I have personal knowledge of the facts set forth in this affidavit.

(Doc. 93-3, page 2, ¶ 1). Defendants are correct that Mr. Radice opines about issues related to alleged defaults by Doing Steel, the Contreras work, letters received from Doing Steel regarding change orders, and generally, the alleged "uncontroverted" nature of Doing Steel's defaults. However, Mr. Radice expressly confirms his personal knowledge on the subjects in the affidavit and it is reasonable to conclude that the Chief Operations Officer would have personal information about issues related to alleged defaults by Doing Steel, the Contreras work, letters received from Doing Steel regarding change orders, and generally, the alleged "uncontroverted" nature of Doing Steel's defaults. As such, the Court finds that Mr. Radice's affidavit complies with Federal Rule of Civil Procedure 56(c)(4). For the reasons stated, Defendants' Motion to Strike or to weigh lightly Mr. Radice's affidavit is **DENIED**.

## B. Counterclaim Count I – Breach of Contract – LPR

### i. First Material Breach of Contract

LPR/Berkshire argue that they are entitled to summary judgment on Counterclaim Count I – Breach of Contract – LPR because the undisputed facts establish that Doing Steel was first to

materially breach the contract between LPR and Doing Steel. Specifically, LPR/Berkshire argue that Defendant Doing Steel failed to make full payment to LPR in September of 2022 and persisted into 2023. Further, LPR/Berkshire assert that Defendant Doing Steel was required to provide LPR written notice and two working days' opportunity to cure any purported contractual deficiencies or breach but did not provide such notice to LPR until April 27, 2023.

Defendants argue that LPR breached the contract first. Defendants argue that Doing Steel's Subcontract with LPR has a pay if paid clause that Doing Steel agrees to pay LPR if and to the extent paid by owner, for satisfactory performance of LPR's work. Defendants argue that by the time payment could have hypothetically been due to LPR in late January 2023, Doing Steel had already put LPR on notice of a pending delay back charge from McCownGordon ("McCown"), the general contractor, in excess of $700,000 and the supplemental works had been performing work on the Project as a supplemental crew to LPR, which LPR was aware. Defendants assert that the amount of these potential backcharges more than outweighed the payment Doing Steel had received for the erection scope of work under its contact with McCown.

Here, the Subcontract Agreement states:

**Contract Payment.** The Contractor agrees to pay Subcontractor if and to the extent paid by owner. … Progress payments, less retainage of 10% shall be made to Subcontractor for Work satisfactorily performed, after receipt by Contractor of payment from Owner for Subcontractor's Work and fully executed partial lien waivers as required.

(Doc. 93-1, Article 1). The Court finds that the Subcontract Agreement had a "pay if paid" provision that is clear and unequivocal and dictates payments as shown above. The Subcontract Agreement further states:

**Failure of Performance & Termination.** Should Subcontractor fail to satisfy contractual deficiencies within two (2) working days from receipt of Contractor's written notice, then the Contractor, without prejudice to any right or remedies, shall

17

have the right to take whatever steps it deems necessary in its sole and absolute discretion to correct said deficiencies, including hiring third party contractors, and charge the cost thereof to Subcontractor, who shall be liable for payment of same, including reasonable overhead, profit and attorneys fees.

Should the Subcontractor fail at any time to supply a sufficient number of properly skilled workmen or sufficient materials and equipment of the proper qualify or fail in any respect to prosecute the Work with promptness and diligence, or fail to promptly correct defective Work or fail in the performance of any of the agreements herein contained, the Contractor may, at its option, perform the Sub-contractor's obligations and utilize the Subcontractor's equipment and materials on the job site in connection therewith. *The Contractor may also provide such labor, materials and equipment and deduct the cost thereof, together with all loss or damage occasioned thereby, from any money then due or thereafter to become due to the Subcontractor under this Agreement or any other agreements.* If such expense & damages exceed such unpaid balance, the Subcontractor shall promptly pay the difference to the Contractor. In the event of the Subcontractor's noncompliance with any portion of this Subcontract, the Contractor or Owner may cancel, terminate, or suspend this Contract.

(Doc. 93-1, Article 5) (emphasis added).

The Court finds Defendant Doing Steel did not breach the contract based on the partial payment for work done during the September 2022 time period and withholding of pay into 2023. As recited above, the Subcontract Agreement allowed Doing Steel to bring in additional labor or materials should LPR fail to prosecute the work with promptness and diligence or fail to correct defective work or fail in the performance of the Subcontract Agreement. The evidence shows Goliath Pipeline and Contreras Steel was brought in, in part, to assist LPR's scope of work due to delays and quality of work issues, causing delay. **(Docs. 106-37, 106-38)**. Doing Steel subsequently withheld payment due to payment for the extra labor and the projected losses from the delay to the project. **(Docs. 93-3, 106-3)**. By virtue of the Subcontract Agreement, Doing Steel had the right to "deduct the cost thereof, together with all loss or damage occasioned thereby, from a*ny money then due or thereafter to become due* to the Subcontractor under [the] Agreement." (Doc. 93-1, Article 5) (emphasis added). The Court finds that Defendants did not breach the contact

from withholding of payment to LPR. For the reasons stated, LPR/Berkshire's Motion for Summary Judgment on Doing Steel's Counterclaim Count I – Breach of Contract – LPR and affirmative defenses of setoff, prior material breach and material breach of contract by LPR based on a first material breach of contract are **DENIED**.

### ii. Notice and Opportunity to Cure

LPR/Berkshire assert that Defendant Doing Steel was required to provide LPR written notice and two working days' opportunity to cure any purported contractual deficiencies or breach but did not provide such notice to LPR until April 27, 2023.Defendants argue that the Subcontract Agreement does not require notice and opportunity to cure for the damages Doing Steel seeks, and regardless, LPR was fully informed about its defaults and given countless opportunities to cure its delayed performance. Specifically, Defendants argue that Doing Steel and McCown provided numerous written communications in October and November 2022 regarding the consequences of LPR not meeting the September 29, 2022, schedule. Defendants argue that LPR had more than enough opportunities to cure these defaults but failed to do so which necessitated both Doing Steel procuring and paying for supplemental labor, and McCown imposing Change Order 19 on Doing Steel.[2]

The Court finds that the Subcontract Agreement does impose a notice and opportunity to cure requirement and that Defendant Doing Steel has satisfied that requirement in the current action. In reading the plain language of the Subcontract Agreement, Article 5 states:

> **Failure of Performance & Termination.** Should Subcontractor fail to satisfy contractual deficiencies within two (2) working days from receipt of Contractor's written notice, then the Contractor, without prejudice to any right or remedies, shall

---

[2] Change Order 19 was a letter sent from McCown to inform Defendant Doing Steel of deductive charge based upon delays in the project. (Doc. 106-53). This change order informed Doing Steel that it was deducting a total amount of $1,138,815.00.

have the right to take whatever steps it deems necessary in its sole and absolute discretion to correct said deficiencies, including hiring third party contractors, and charge the cost thereof to Subcontractor, who shall be liable for payment of same, including reasonable overhead, profit and attorneys fees.

(Doc. 93-1, Article 5). While Defendants attempt to assert that Article 5 does not provide a notice and opportunity to cure requirement, the Court cannot disregard the plain language set forth in the Subcontract Agreement. Further, the Court finds that Defendant Doing Steel provided notice and an opportunity to cure. The submitted exhibits show that Doing Steel repeatedly informed LPR regarding the completion of the project as reflected in the September 29, 2022, schedule. **(Docs. 106-34, 106-37, 106-40).** These exhibits show that LPR was aware of the need to have more manpower and the need to complete their scope of work by the deadlines. *Id*; see also Doc. 106-42. Eventually, McGown, the lead contractor, sent a Letter of Default to Doing Steel regarding the adverse implications from being behind schedule. **(Doc. 106-43).** Doing Steel forwarded that Letter of Default to LPR informing them of adverse impacts regarding the current delays and putting it on notice of adverse consequences of further delays. **(Doc. 106-44)**. LPR had notice of needing to complete their scope of work by the deadlines identified in the September 29, 2022, schedule and repeated changes to cure that failure by bringing the project up to date but was unable to do so. For the reasons stated, LPR/Berkshire's Motion for Summary Judgment on Doing Steel's Counterclaim Count I – Breach of Contract – LPR and affirmative defenses of setoff, prior material breach and material breach of contract by LPR based on failure to give notice and an opportunity to cure are **DENIED**.

### iii.     Calculation of Offset Damages and Counterclaim Damages

LPR/Berkshire argue that the back charge claims of Doing Steel employ a discredited method of total cost analysis and Doing Steel seeks to pass on all delay charges incurred by Doing

20

Steel and all costs incurred by Doing Steel arising from its separate contract Contreras Steel without regard to fault or responsibility and thus cannot establish a claim for damages. Defendants argue that Doing Steel's damage calculation and apportionment is a factual issue. Defendants argue that they have set forth facts establishing the damages due to LPR's failure to meet the September 29, 2022, schedule which LPR disagrees.[3] Defendants further argue that Doing Steel has set forth genuine issues of material fact regarding LPR's liability for these delay damages. Defendants asset that LPR admits that it did not meet the September 29, 2022, schedule, and despite claiming that there were material delivery delays caused by Doing Steel, LPR cannot point to daily reports or other e-mails noting significant disruptions or lost days of work.

The Court finds the amount of damages in dispute are genuine issues of material fact. Defendants have provided evidence of the damages caused by delays to the September 29, 2022, schedule. (Doc. 106-53, pages 2, 24 and 36). However, Defendant Doing Steel and LPR assert issues of material fact arguing who is responsible for the damages as shown between Change Order 19, the deductive charge from McGown to Doing Steel, and the supplemental labor costs. LPR/Berkshire argue that Doing Steel is attempting to push all the damages noted in Change Order 19 onto LPR without taking their share of the delays. LPR/Berkshire further argue that supplemental work by Goliath was there in part to work on field fabrication and field fabrication fixes, which was not in LPR's scope of work, nor did Doing Steel separate out the work Contreras did in LPR's scope of work compared to that of Doing Steel's scope of work. **(Doc. 109-1, page 4)**. As there are genuine issues of material fact as to the damages and how much each party is

---

[3] Doing Steel states it has set forth facts that establish: (1) McCown backcharged Doing Steel for $1,051,344 for the delay claim in Change Order 19 which was the responsibility of LPR due to their failure to meet the September 29, 2022 schedule which "wiped the slate clean" form prior delays; (2) Doing Steel paid Contreras and Goliath a total of $2,430,989.64 for work that was supplemental to and directed by LPR; (3) Doing Steel has paid LPR $1,1237,886.19; and (4) after conducting a reconciliation of LPR's contract with Doing Steel, LPR owes Doing Steel $600,997.02. (Doc. 106, page 82).

responsible, summary judgment is not appropriate on this issue. For the reasons stated, LPR/Berkshire's Motion for Summary Judgment on Doing Steel's Counterclaim Count I – Breach of Contract – LPR and affirmative defenses of setoff, prior material breach and material breach of contract by LPR based on calculation of offset damages and counterclaim damages are **DENIED**.

### C. Counterclaim Count II – Action on Bond – Berkshire

LPR/Berkshire argue that Counterclaim Count II – Action on Bond – Berkshire fails because Berkshire's liability is derivative of the liability of LPR, and Berkshire cannot be liable to Doing Steel if and to the extent that LPR is not. Defendants agree with LPR that Berkshire's liability to Doing Steel is co-extensive with that of its principal, LPR. Defendants argue that since they have shown that there are material issues of fact at issue for the tier of fact to review and determine as to Doing Stee's Counterclaim against LPR, the same is true as to Berkshire.

The Court agrees that Berkshire's liability is derivative of the liability of LPR. As this Court has already ruled that LPR/Berkshire are not entitled to summary judgment as to Doing Steel's affirmative defenses or Counterclaim I – Breach of Contract, the Court concludes that Berkshire is likewise not entitled to summary judgment as to Doing Steel's Counterclaim Count II. For the reasons stated, LPR/Berkshire's Motion for Summary Judgment as to Counterclaim Count II – Action on Bond – Berkshire is **DENIED**.

## CONCLUSION

### I. Defendants' Motion for Partial Summary Judgment

For the reasons stated, Defendants' Motion for Summary Judgment as to Plaintiff's Count II – Quantum Meruit claim is **GRANTED**. Summary judgment as to Plaintiff's Count II –

Quantum Meruit is entered in favor of Defendants. Defendants' Motion for Summary Judgment on Count IV - Claim Against Nationwide Under Lien Release Bond based upon the just and true account requirement in Ark. Code Ann. § 18-44-117 is **DENIED**. Defendants' Motion for Summary Judgment on Count IV - Claim Against Nationwide Under Lien Release Bond based upon the requirements of Ark. Code Ann. § 18-44-115 is **DENIED**.

## II.    LPR/Berkshire's Joint Motion for Partial Summary Judgment

For the reasons stated, Defendants' Motion to Strike or to weigh lightly Mr. Cozza's affidavit is **DENIED**. Defendants' Motion to Strike or to weigh lightly Mr. Radice's affidavit is **DENIED**. LPR/Berkshire's Motion for Summary Judgment on Doing Steel's Counterclaim Count I – Breach of Contract – LPR and affirmative defenses of setoff, prior material breach and material breach of contract by LPR based on a first material breach of contract are **DENIED**. LPR/Berkshire's Motion for Summary Judgment on Doing Steel's Counterclaim Count I – Breach of Contract – LPR and affirmative defenses of setoff, prior material breach and material breach of contract by LPR based on failure to give notice and an opportunity to cure are **DENIED**. LPR/Berkshire's Motion for Summary Judgment on Doing Steel's Counterclaim Count I – Breach of Contract – LPR and affirmative defenses of setoff, prior material breach and material breach of contract by LPR based on calculation of offset damages and counterclaim damages are **DENIED**. LPR/Berkshire's Motion for Summary Judgment as to Counterclaim Count II – Action on Bond – Berkshire is **DENIED**.

**IT IS SO ORDERED.**

Date: February 10, 2026

_____*/s/ Douglas Harpool*_____
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**